(No. 31133.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* MARJORIE LEVISEN *et al.*, Appellants.

*Opinion filed January 18, 1950.*

Simpson, J., dissenting.

Gilbert K. Hutchens, of Carrollton, and Norbert L. Hutchens, of Winchester, (Jack A. Alfeld, of Carrollton, and Richard E. Mann, of Winchester, of counsel,) for appellants.

Ivan A. Elliott, Attorney General, of Springfield, and L. A. Mehrhoff, State's Attorney, of Carrollton, (Harry L. Pate, of Tuscola, of counsel,) for the People.

Mr. Justice Crampton delivered the opinion of the court:

Defendants, the parents of a girl seven years of age, were convicted by the county court of Greene County for violating the compulsory school attendance law. (Ill. Rev. Stat. 1947, chap, 122, par. 26-1.) They appeal directly to this court, contending (1) that the evidence is insufficient to sustain the conviction and (2) that the statute is unconstitutional.

Appellants are Seventh Day Adventists in religion, believing that the child should not be educated in competition with other children because it produces a pugnacious character, that the necessary atmosphere of faith in the Bible cannot be obtained in the public school, and that for the first eight or ten years of a child's life the field or garden

is the best schoolroom, the mother the best teacher, and nature the best lesson book.

The father is a college graduate and a minister in his religion. The mother has had two years of college and some training in pedagogy and educational psychology. The evidence consists solely of a stipulation providing, *inter alia,* that the child would be in the third grade if she went to the public school; that under the direction of a Seventh Day Adventist institution the mother has been teaching her third-grade work at home for five hours per day and in addition teaches her vocal music; that the child has regular hours for study and recitation; and that she shows proficiency comparable with average third-grade students. The subjects thus being taught and the textbooks from which the instruction is given are set forth in detail. Further provisions recite that appellants refuse to send their child to the public school, and that "she does not attend and has not attended a parochial or private school."

The statute in question requires that "Whoever has custody or control of any child between the ages of seven and sixteen years shall cause such child to attend some public school in the district wherein the child resides * * *." Provisions are then added exempting "Any child attending a private or parochial school where children are taught the branches of education taught to children of corresponding age and grade in the public schools, * * *." Other provisions, not material here, make exceptions in cases of physical or mental disability, temporary absences for cause, and children over fourteen years of age who are necessarily employed.

Appellants contend the State has failed to prove the child was not attending a "private school" within the intention of the legislature. They argue that a school, in the ordinary meaning of the word, is a place where instruction is imparted to the young, that the number of persons being taught does not determine whether the place is a school,

and that by receiving instruction in her home in the manner shown by the evidence the child was attending a private school. We agree with this construction of the statute. Compulsory education laws are enacted to enforce the natural obligation of parents to provide an education for their young, an obligation which corresponds to the parents' right of control over the child. (*Meyer* v. *Nebraska,* 262 U.S. 390, 400.) The object is that all children shall be educated, not that they shall be educated in any particular manner or place. (See *Commonwealth* v. *Roberts,* 159 Mass. 372, 34 N.E. 402.) Here, the child is being taught third-grade subjects, has regular hours for study and recitation, and shows a proficiency comparable with average third-grade students. There is nothing in the record to indicate her education is in·any way being neglected. We think the term "private school," when read in the light of the manifest object to be attained, includes the place and nature of the instruction given to this child. The law is not made to punish those who provide their children with instruction equal or superior to that obtainable in the public schools. It is made for the parent who fails or refuses to properly educate his child.

Although the language of the present act has not previously been construed by this court, the scope of similar statutes has been considered by courts of other jurisdictions. In *State* v. *Peterman,* 32 Ind. App. 665, 70 N.E. 550, the father of a child being taught in the private home of the teacher was prosecuted for violation of a law requiring children to be sent "to a public, private or parochial school." The child attended the teacher's home regularly and was taught all the branches taught in the public schools. The teacher did not advertise herself as keeping a private school, had no regular tuition fixed, and did not have, or desire to have, any pupils other than the defendant's child. The sole question was whether the child was being sent to a private school, within the meaning of the statute.

In holding that the parent had complied with the law the court observed: "If a parent employs and brings into his residence a teacher for the purpose of instructing his child or children, and such instruction is given as the law contemplates, the meaning and spirit of the law have been fully complied with. This would be the school of the child or children so educated, and would be as much a private school as if advertised and conducted as such. We do not think that the number of persons, whether one or many, make a place where instruction is imparted any less or more a school." (See, also, *Wright* v. *State,* 21 Okla. Cr. 430, 209 Pac. 179.) Such construction of the words "private school" is in accord with the policy of the Illinois statute.

In concluding that appellants have not been proved guilty of violating the statute we do not imply that parents may, under a pretext of instruction by a private tutor or by the parents themselves, evade their responsibility to educate their children. Those who prefer this method as a substitute for attendance at the public school have the burden of showing that they have in good faith provided an adequate course of instruction in the prescribed branches of learning. This burden is not satisfied if the evidence fails to show a type of instruction and discipline having the required quality and character. No parent can be said to have a right to deprive his child of educational advantages at least commensurate with the standards prescribed for the public schools, and any failure to provide such benefits is a matter of great concern to the courts.

The People maintain that under the stipulation appellants admitted their child "does not attend and has not attended a parochial or private school," and are therefore precluded from arguing that she attended a private school by receiving instruction in the home. This contention cannot be sustained. While stipulations of fact are always proper and binding upon the parties, a stipulation as to

the legal conclusions arising from facts is inoperative. The court cannot be controlled by agreement of counsel on a related question of law. It is the province of the court to determine what the legislature meant by the term "private school." Indeed, the question whether the child attends such a school within the meaning of the statute is the very issue in the case. If we accept the conclusions contained in the stipulation then there is no question at all in the case as to whether appellants violated the statute. The parties themselves would have already determined that issue. In so far as the stipulation set forth facts as to the place and source of instruction and its nature and extent, it is, of course, binding upon the parties. But the legal effect of those facts in showing attendance at a private school within the contemplation of the legislature is a question of law for the decision of courts. Such matters cannot be affected by stipulation of the parties. *National Bank of Colchester* v. *Murphy,* 384 Ill. 61.

As we have concluded that appellants' conviction cannot be sustained upon the evidence, it becomes unnecessary to consider the further contention that the statute violates the constitutional right of parents to direct the education of their child.

*Judgment reversed.*

Mr. JUSTICE SIMPSON, dissenting:

I cannot agree with the majority opinion. To hold that the appellants were conducting a private school for the instruction of their daughter in a manner which does not violate the applicable statute, may be construed by many parents as a license to keep their children at home instead of sending them to school. This will do violence to the letter and spirit of the law. True, the opinion says in substance that parents may not, under a pretext of instruction by a private tutor or by themselves, evade their responsibility to educate their children. But each case will necessarily depend upon its own peculiar facts. The school law

will be no guide or rule to be followed. Who will be the judge of the facts? What will be the position of the truant officer when he is told by parents that their child is receiving proper instruction at home?

If the compulsory attendance school law is not enforced, may not parents withdraw their children from school at any time desired, even in the middle of a term or semester so as to teach them at home? Thereafter, should they change their minds, could they not again, under the law, return their children to the same school? Schools may thereby be disrupted and certainly will lose the power, prestige and jurisdiction which is now theirs. In my opinion the appellants were properly found guilty, even though it be conceded that they are qualified instructors. We should not permit so salutory a statute to be thwarted by the whim and caprice of the many who, I fear, will take advantage of the situation under authority of this case.

Under a statute similar to the one under consideration and under like facts, parents were convicted in the State of Washington for failure to comply with the statute. In an opinion upholding the conviction the court said in part: "We have no doubt many parents are capable of instructing their own children, but to permit such parents to withdraw their children from the public schools, without permission from the superintendent of schools, and to instruct them at home, would be to disrupt our common school system, and destroy its value to the state * * *. We do not think that the giving of instruction by a parent to a child, conceding the competency of the parent to fully instruct the child in all that is taught in the public schools, is within the meaning of the law 'to attend a private school.' Such a requirement means more than home instruction." (*State of Washington* v. *F. B. Connort,* 69 Wash. 361, 124, p. 910.) This case seems to me to be more in point and to be sounder and better law than the authority cited in the main opinion.