**The People of the State of Illinois, Plaintiff-Appellant, v. Donald Heizer, et al., Defendants-Appellees.**

Gen. No. 65–29.

Fifth District.

May 13, 1966.

Rehearing denied June 11, 1966.

EBERSPACHER, J., dissenting.

Howard Clotfelter, State's Attorney of Randolph County, of Chester, Sprague, Bock and Norton, of Belleville, and Conn and Clendenin, of Sparta, for appellant.

Atchison & Koeneman, of Chester, for appellees.

MORAN, J.

This is an appeal from an order of the Circuit Court of Randolph County, Illinois, rendering judgment against the plaintiff on its complaint in quo warranto, alleging that the defendants were usurping the office of trustees of a purported public fire protection district known as the Prairie Du Rocher Fire Protection District.

Plaintiff alleges that the district has no legal existence and the defendants justify their trusteeships by denying the plaintiff's claims and asserting the valid organization of the district.

The Illinois Legislature provided for the organization of such fire districts in chapter 127½, section 21, of the Illinois Revised Statutes. The statute is as follows:

"Whenever any territory is (1) an area of contiguous territory in a county, or in more than one, but in not more than 5 counties; (2) so situated that the destruction by fire of the buildings and other property therein is hazardous to the lives and property of the public; (3) so situated that the acquisition, establishment, maintenance and operation of a fire station or stations, facilities, vehicles, apparatus and equipment for the prevention and con-

9

trol of fire therein will conduce to the promotion and protection of the health, safety, welfare and convenience of the public; (4) so situated that it does not divide any city, village or incorporated town; (5) so situated that such territory contains no territory included in any other fire district, the same may be incorporated as a fire protection district. Such districts may be incorporated under this Act in the manner following:

"Fifty or more of the legal voters resident within the limits of such proposed district, or a majority thereof if less than 100, may petition the county court of the county which contains all or the largest portion of the proposed district to cause the question to be submitted to the legal voters of such proposed district, whether such proposed territory shall be organized as a fire protection district under this Act; such petition shall be addressed to said county court and shall contain a definite description of the boundaries of the territory to be embraced in the proposed district, and the name of such proposed district (and) shall allege facts in support of such organization and incorporation.

"Upon filing any such petition in the office of the county clerk of the county in which such petition is made, it shall be the duty of the county court to fix a time and place for a hearing upon the subject of the petition.

"Notice shall be given by the county court to whom the petition is addressed, or by the county clerk or sheriff of the county in which such petition is made at the order and direction of the county court, of the time and place of the hearing upon the subject of the petition at least 20 days prior thereto by one publication thereof in one or more daily or weekly papers published within the proposed fire protection district (or if no daily or week-

ly newspaper is published within such proposed fire protection district, then either by one publication thereof in any newspaper of general circulation within said territory or by posting at least ten copies of such notice in such district at least 20 days before such hearing in conspicuous places as far separated from each other as consistently possible), and by mailing a copy of such notice to the mayor or president of the board of trustees of all cities, villages and incorporated towns within such proposed fire protection district."

A petition was filed, a hearing held, and an election conducted. The plaintiff challenges the organization on several points.

The description of the district is first challenged as inadequate in that the proposed boundaries failed to completely enclose the lands of the proposed district. The description reads:

"Thence Southerly along the west bank of the Kaskaskia River to the point where the Kaskaskia intersects the Mississippi River; thence Northwesterly along the low watermark of the east bank of the Mississippi River to the point of beginning."

Plaintiff introduced evidence that between the west bank of the Kaskaskia and the low watermark of the Mississippi there was a 75 to 100-yard gap in the boundaries. Several persons familiar with this area testified that the west bank of the Kaskaskia and the low watermark of the Mississippi's east bank do not intersect. The bank is distinguished from the low watermark or the water's edge; a bank is a ridge of land or acclivity which borders the watercourse. Marion L. Wills, a qualified surveyor, testified on behalf of the defendant that he would be able to survey the area and locate all its boundaries by interpreting the description as a whole.

11

 Where the area to be incorporated and the boundary lines enclosing it are readily ascertainable by a reading of the whole description, the petition is sufficient to confer jurisdiction upon the county court even though the boundary lines described in the petition are erroneous because they fail to enclose the area sought to be incorporated. Descriptions of municipal boundaries are not construed with the same strictness as are those contained in deeds and contracts, and if the description in a petition to incorporate fairly apprises the public of the property involved, it will be considered sufficient. The law is well settled that boundaries give way to intention when the intention can be known. The People v. Anderson, 398 Ill 480, 76 NE2d 773; People ex rel. Magnuson v. Kramer, 21 Ill2d 392, 172 NE2d 757; People ex rel. Village of Worth v. Ihde, 23 Ill2d 63, 177 NE 2d 313, and The People v. Knapp, 28 Ill2d 239, 190 NE 2d 774.

██ Therefore, assuming that the present boundary description is erroneous because it does not completely enclose the proposed district, plaintiff could still not prevail as a reading of the whole description would fairly apprise the public of the property involved. If there were a gap, it would be a sandbar of variable width. It is obvious that it was intended that the district was to be bounded by the Kaskaskia and Mississippi Rivers at the disputed location. Since it may readily be seen what lands were intended to be comprised within the boundaries of the proposed district and since the area in which the corporation has power is clear, the description of the Prairie Du Rocher Fire District is adequate.

██ The words, "shall contain a definite description of the boundaries of the territory to be embraced in the proposed district," must be read in context with the legislative purpose of the Act which is "for the prevention and control of fire therein." Therefore, since the territory of the proposed district is contiguous, since it

12

does not contain territory previously included in another fire district, and since the boundaries are so located as to effectuate the objective of the Act, namely the prevention and control of fires therein, it is a "definite description of the boundaries" within the meaning of the statute. People ex rel. Armstrong v. Huggins, 407 Ill 157, 94 NE2d 863.

 The plaintiff's second challenge to the district's legal existence is that the description of the district includes land situated in the State of Missouri, to wit: land commonly known as Turkey Island. Defendants admit this allegation by stipulation but deny that this has any effect on the legal existence of the district.[1]

Appellants urge that the petition in this class of case is jurisdictional; and, when it contains lands not properly includable, it is fatally defective. People ex rel. Cadwell v. McDonald, 208 Ill 638, 70 NE 646. In this case a petition was defective because it failed to meet the statutory requirement that the petition include all lands to be benefited by the new ditch. The principal and key failing, therefore, was not an inclusion of lands not properly includable, but an exclusion of lands which specifically could not be excluded.

██ ██ In People ex rel. Goldsbery v. Zoller, 337 Ill 362, 169 NE 288, the court decided that the petition was defective because it included lands not properly includable *after* it had found the petition defective for want of proper notice. The court in deciding what it did not have to, relied upon Soldier Creek Drainage & Sanitary Dist. v. Illinois Cent. R. Co., 323 Ill 350, 154 NE 153,

[1] Since this is actually a stipulation as to where the western boundary of the State of Illinois is at this point, it is a stipulation of law and not binding on this court. National Bank of Colchester v. Murphy, 384 Ill 61, 50 NE2d 748. However, we do not pass on this question because in our opinion even if the land in question were erroneously included, it would not affect the legal existence of the district.

13

which is also cited in People ex rel. Fitton v. Ehler, 338 Ill 67, 170 NE 1. An examination of Soldier Creek Drainage & Sanitary Dist. v. Illinois Cent. R. Co., supra, shows that here also the court decided that a petition which included land not properly includable was defective after deciding it was already defective for other reasons. This case, in deciding what it need not have, relied upon People ex rel. Smerdon v. Crews, 245 Ill 318, 92 NE 45, and People ex rel. Bancroft v. Lease, 248 Ill 187, 93 NE 783. These final concluding cases are both ultimately founded on the principle that there cannot be two municipal corporations in the same area with the same purpose. See McQuillin, Mun Corp, § 7.09, p 269. This ultimate reason does not seem sufficient to decree the petition defective, when there is no overlap of similar municipal powers resulting from an erroneous inclusion of Missouri land. The lands are not properly includable for different reasons. As appellants point out, this order could not possibly affect Missouri land, whereas it could affect Illinois land and would have, were it not for a jurisdictional statutory prohibition against including lands in another fire district. This prohibition being based on the doctrine against similar municipal corporations in the same area is, in turn, based on a desire to avoid confusion and promote efficiency. (See McQuillin, Mun Corp, supra, § 7.08.) The inclusion of the Missouri land presents no confusion; the order can have no effect on the island (or its people if, indeed, it is inhabited).

In People v. Knapp, 28 Ill2d 239, 190 NE2d 774, it was contended that the petition to incorporate the City of Crest Hill was fatally defective because the description of the territory included a small piece within the city limits of Joliet. The court said at pages 244, 245:

> "We do not think the mere fact that this small sliver of land was inadvertently included is enough

to invalidate the incorporation proceedings. While the statute contemplates that the territory to be incorporated will not be already incorporated, it does not require either expressly or by necessary implication the result sought by the plaintiffs in this case. It deals with practical matters and must be given a practical, common-sense construction. The strip in question lies wholly within and is a part of a public thoroughfare which will be used by the general public indiscriminately with the balance of the street. Under these circumstances the overlap is de minimus and will not be considered."

We believe that the statute governing the organization of fire districts also "deals with practical matters and must be given a practical, common-sense construction."

If de minimus can be applied where the court's action could affect Illinois land, it seems much more logical to apply it where the court's action cannot have any effect on the Missouri land.

Plaintiff's third and final challenge to the organization of the district is that the record of the organizational proceedings does not show the required written notice, although properly published, was mailed to the president of the Village of Prairie Du Rocher. The defendants answer that the president of the village trustees, as well as other officers of the village, was a signer of the organization petition and had actual notice of the hearing. The defendants further urge that only the village and not the present plaintiff can complain of this failure to give notice.

Plaintiff relies strongly on the case of People ex rel. Goldsbery v. Zoller, supra, to show that the failure to mail the notice to the president of the village board of trustees precluded the county court's having jurisdiction over the persons. The Goldsbery case is not in point. That case dealt with a statute which required ten notices to be posted within the proposed district.

Nine notices were actually posted within the district, and one was posted just outside the district. The court held that having failed to post the ten required notices within the district, the notice requirement of the statute had not been met, and therefore no proper notice had been given to anyone in the district. It cannot be contended in the case before this court that the notice given by publication failed to give notice to all persons within the district. The published notice clearly gave the County Court of Randolph County jurisdiction over all persons located in the district and specifically jurisdiction over the relators in this proceeding. The Village of Prairie Du Rocher has not objected to the formation of the Prairie Du Rocher Fire Protection District.

 The obvious purpose of the statute requiring notice be given to a municipality is to give such municipality an opportunity to object to the formation of the district. However, the right to object, if such a right exists at all, by collateral proceedings, is strictly limited to that person who failed to receive the notice, and no one else. The County Court of Randolph County had jurisdiction over the persons of the relators and other persons residing within the district and had jurisdiction of the subject matter. Consequently, its orders are binding upon the relators, and those orders may not be collaterally attacked in this proceeding.

In People ex rel. Fitton v. Ehler, supra, the validity of the district was attacked on the grounds that the county court had failed to acquire jurisdiction of the person of one Mary T. Fitton. Her land had been excluded from the final order incorporating the district. Thereafter, her land was annexed to the territory and it was alleged that it was done for the purpose of evading the statute and defeating the lawful rights of Mary T. Fitton. The court said at page 79: "The county court

16

had jurisdiction of the subject matter. If it had not jurisdiction of the person of Mary Fitton the order of organization would be void as to her. As to every other land owner it would be valid."

The Commissioners of Sny Island Levee Drain. Dist. v. Shaw, 252 Ill 142, 96 NE 984, involved a writ of error on an assessment proceeding, wherein resident taxpayers were complaining of defective notice to nonresident landowners under the Levee Act, the court refused to allow the resident landowners to complain of defects in the "proceedings or rulings of the court which only affect other parties to the proceedings." Those landowners who were allegedly added illegally were not objecting.

In our opinion, notice, especially actual notice which the statute required be given the village, is limited in its effect. The harm done, if any, goes only to the unnotified party, not to the entirety.

In addition, the record shows that the President of the Board of Trustees of the Village of Prairie Du Rocher was instrumental in the formation of the Prairie Du Rocher Fire District; that he signed the petition for the organization of the district; that the petition was presented at a regular meeting of the village board of trustees and six members of the board of trustees and village clerk signed it at that time; that he saw a copy of the notice of hearing on the petition prior to its publication and that the attorney for the Village of Prairie Du Rocher conducted the legal proceedings to form the Prairie Du Rocher Fire District at the request of the Prairie Du Rocher village officials.

For the foregoing reasons, the judgment of the Circuit Court of Randolph County is affirmed.

Judgment affirmed.

GOLDENHERSH, J., concurs.

17

DISSENTING OPINION

EBERSPACHER, J.

All three of plaintiff's challenges go to the power of the court to enter the order creating the Prairie Du Rocher Fire Protection District.

As is true in the case of the creation of any municipal corporation, the constitutional power to create the district lay in the General Assembly, and that power has been delegated to the court, which derived its jurisdiction from the statute alone. The court had no inherent powers, and no presumption arises to support its action in any particular. The conditions of the statute authorizing the creation of the fire protection district must have been complied with in the manner prescribed by statute, else the court was without jurisdiction. People ex rel. Moran v. Teolis, 20 Ill2d 95, 169 NE2d 232; People ex rel. Goldsbery v. Zoller, 337 Ill 362, 169 NE 228; People ex rel. County of DuPage v. Lowe, et al., 67 Ill App2d 369, 214 NE2d 593.

Likewise, unless the petition to organize the district met the statutory requirements, both as to containing "a definite description of the boundaries" and as to including only territory which met all the qualifications of the statute, it was defective. The petition was jurisdictional, and when it was defective, the resulting district was not legally organized. People ex rel. Cadwell v. McDonald, 208 Ill 638, 70 NE 646; People ex rel. Goldsbery v. Zoller, supra.

The case of People ex rel. Armstrong v. Huggins, 407 Ill 157, 94 NE2d 863, only held that the Fire Protection District Act was constitutional; it did not pass on the adequacy of the description of boundaries of any district, nor did it hold that any requirements of the Act could be overlooked so long as the proposed territory was contiguous and not included in any other fire district; and neither did it hold that the formation of

18

a district within the spirit, object, and meaning of the Act was sufficient, without statutory compliance.

Compliance within the spirit, object and meaning of the Act, is not enough, when the statute has not been complied with. A plea of justification in an action of quo warranto must allege the existence and performance of all of the conditions precedent to the defendant's right to exercise the privilege of office. People ex rel. County of DuPage v. Lowe, et al., supra; Greening ex rel. Rowe v. Barnes, 355 Ill 99, 188 NE 805.

Here plaintiffs by their reply contended that a part of the territory included in the original petition and order organizing the district was in Missouri and introduced into evidence a series of exhibits consisting of records of the General Land Office, plats and surveys, showing a part of the territory to be in Missouri. The burden of justification was on the defendants and there is nothing in the record to show that Turkey Island was in Illinois, even if we choose to disregard the stipulation that it was in Missouri.

In People v. Knapp, 28 Ill2d 239, 190 NE2d 774, a strip six or seven feet in width and approximately 250 feet long violated the statutory requirement because when territory was disconnected from Joliet this strip was inadvertently not included, and our Supreme Court held the statute was to be given a common-sense construction, and held the overlap to be de minimus and not to be considered. To me there is a substantial difference between such a sliver and a tract of some 20 acres over which neither the General Assembly nor the court could conceivably have any jurisdiction, and the very fact that the order could have no effect on the island points up to the jurisdictional defect in the petition.

Despite the fact that the statute deals with practical matters and must be given a practical, common-sense construction, there is some point that the error is so manifest, or of such a nature, that it cannot be said

19

that the General Assembly intended the court to have power to act on a defective petition. When the petition and order includes territory that so obviously fails to meet the statutory requirement, and over which neither the General Assembly nor the court has any constitutional or inherent power to act, it would seem that such point had been reached.

The General Assembly prescribed that in addition to notice by publication, notice should be given by mailing to the President of the Village Board. Here along with the delegation of power the General Assembly set out what was due process. They felt that since villages also had power to control fires under the Cities and Villages Act that Villages and Cities should be given special notice. Giving of the statutorily prescribed notice was essential to the court's jurisdiction, and the President of the Village Board had no power, by any Act or means whatever, to waive the statutory requirement. The fact that he and members of the Village Board were active in the formation makes no difference, because they were only acting personally, because a Village has no statutory authority to form a fire district, even though it may furnish fire protection, see Lafferty v. Feicke, 252 Ill 414, 96 NE 1052, and the attempt to circumvent it in Brown v. Jones, 254 Ill 521, 98 NE 962. The principles enunciated in those two cases are not peculiar to school districts, they are common to all cases involving a delegation of legislative authority. As in McCarthy v. City of Chicago, 312 Ill App 268, 38 NE 2d 519, the giving of the notice was essential and could not be waived by its officers, acting either officially or individually. In Tennessee Drain. Dist. v. Maye, 258 Ill 296, 101 NE 580, no property owners filed objection in the court below, the district organization was fatally defective as to all property owners not waiving the defect in the court below; here the Village could not and did not waive the defect.

20

In a quo warranto proceeding a plea of justification by defendants must show the proceedings by which the district was organized and this can be done only by the record. The jurisdiction of the court could only be shown by its record and that record is the only lawful evidence of the action taken, and cannot be contradicted, added to or supplemented by parol. People ex rel. King v. North Fork Outlet Drain. Dist., 331 Ill 68, 162 NE 184. As a result, the testimony of the Village President and the Village Attorney was not competent, in the face of the objections made by plaintiff.

The Fitton case, 338 Ill 67, 107 NE 1, I do not consider applicable on this point, because the rule is different as to municipal corporations (in this case the Village). Nothing it or its officers did could effect the jurisdiction given the court by the General Assembly, and notice of the officers in their individual capacity is not notice to the village required by the statute. In the Fitton case, the court held that annexing her land, which was included in the petition but left out of the order because to include it in the order would have deprived the court of jurisdiction since they had no jurisdiction of her person, *"vitiated the entire proceedings."* Here the Village was not subsequently brought in, and nothing occurred to vitiate the proceedings.

I consider the case of People ex rel. Goldsbery v. Zoller, supra, squarely in point. In cases of this kind, it is not because the people did not get notice; it is because the statute, which delegated the authority of the court to act, has not been complied with, therefore the court had no authority. In the Zoller case that nine notices posted inside the district and the tenth just outside, did not give actual notice was not contended, but "the notice requirement of the statute had not been met, and therefore no proper notice had been given to anyone in the district." The notice required by the statute was the process by which the court acquired juris-

21

diction, not only of person and territory, but the power to act in reference to the creation of a fire district.

I would, therefore, reverse the judgment.